Slip Op. 20-60

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **DIS VINTAGE LLC,**<br><br>                    Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>                    Defendant. | **Before: Timothy M. Reif, Judge**<br><br>**Court No. 16-00013** |

## <u>OPINION</u>

[Staying the cross-motions for summary judgment and remanding to Customs to determine the classification and appropriate rate of duty in conformity with this decision.]

Dated: <u>May 6, 2020</u>

<u>Peter S. Herrick</u>, Peter S. Herrick, P.A. of St. Petersburg, FL argued for plaintiff DIS Vintage LLC.  With him on the brief was <u>Josh Levy</u>, Marlow, Adler, Abrams, Newman and Lewis, P.A. of Coral Gables, FL.

<u>Monica P. Triana</u>, Trial Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice of New York, NY argued for defendant United States.  With her on the brief was <u>Chad A. Readler</u>, Acting Assistant Attorney General and <u>Amy M. Rubin</u>, Assistant Director, International Trade Field Office of New York, NY.  Of Counsel was <u>Sheryl A. French</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Reif, Judge: This case is before the court to determine the proper classification of the imported subject merchandise.  The dispute concerns the tariff classification of secondhand clothing imported by DIS Vintage LLC ("plaintiff" or "DIS Vintage").  Plaintiff challenges the determination by United States Customs and Border Protection

("Customs") that the subject merchandise comprises "commingled goods."  This determination in turn led to Customs' subsequent classification of the subject merchandise under subheading 6204.63.3510 of the Harmonized Tariff Schedule of the United States ("HTSUS"),[1] which covers women's trousers or breeches and carries a 28.6 percent *ad valorem* duty.  Plaintiff argues that the subject merchandise is properly classified under subheading 6309.00.0010 of the HTSUS, which covers "worn clothing" and is duty-free.  The question presented is whether the subject merchandise is properly classified as "worn clothing" in Heading 6309 or whether the subject merchandise is "commingled goods" and properly classified as "women's trousers or breeches" under Heading 6204 or as another item of clothing contained in the entry.

Plaintiff and the United States ("defendant" or "Government") filed cross-motions for summary judgment addressing the proper classification of the imported merchandise.  *See* Pl.'s Mem. of Law in Supp. of Pl.'s Mot. For Summ. J., ECF No. 26 ("Pl. Br.");  Mem. In Opp. to Pl.'s Motion for Summ. J and in Supp. of Def. Cross-Mot. For Summ. J., ECF No. 36 ("Def. Br.").  This Court has jurisdiction over this action under 28 U.S.C. § 1581(a).

For the reasons set forth below, the court stays the cross-motions for summary judgment and remands to Customs to determine the appropriate classification and rate of duty in conformity with this decision.

---

[1] All citations to the HTSUS, including Chapter Notes and General Notes, are to the 2013 edition.  This version was in effect on April 23, 2013, when plaintiff entered the subject merchandise.  *See* 19 C.F.R. § 141.69.

## BACKGROUND

The action before the court pertains to 443 bales of secondhand clothing imported into the United States (the "subject merchandise"). DIS Vintage Statement of Material Facts for Which There is No Genuine Issue to be Tried ("Pl. Stmt. Facts"), ECF No. 27 ¶ 16; Defendant's Responses to Plaintiff DIS Vintage's Rule 56.3 Statement of Material Facts ("Def.'s Resp. to Pl. Stmt. Facts"), ECF No. 36-3 ¶ 16. The bales were entered in two sizes, 100 pounds and 1,000 pounds. Def.'s Statement of Undisputed Facts ("Def. Stmt. Facts"), ECF No. 36-2. ¶ 6; DIS Vintage's Responses to Defendant's Rule 56.3 Statement of Undisputed Facts ("Pl.'s Resp. to Def. Stmt. Facts"), ECF No. 41. ¶ 6. The subject merchandise was filed under Entry No. AFP-1304311 on April 23, 2013, at the Port of Miami, with a declared value of $23,079.45. Pl. Stmt. Facts ¶¶ 13, 16; Def.'s Resp. to Pl. Stmt. Facts ¶¶ 13, 16. Plaintiff entered the subject merchandise as "[w]orn clothing" under HTSUS heading 6309.00.0010, which is duty-free. Pl. Stmt. Facts ¶ 18; Def.'s Resp. to Pl. Stmt. Facts ¶ 18. The subject merchandise was sold to DIS Vintage (a broker of secondhand clothing) by Le Relais, an entity in France that receives donated clothing.[2] Pl. Stmt. Facts ¶¶ 3, 19-20, 23; Def.'s Resp. to Pl. Stmt. Facts ¶¶ 3, 19-20, 23.

After the subject merchandise was entered, Customs selected 20 samples for review and inspection. Pl. Stmt. Facts ¶ 31; Def. Stmt. Facts ¶ 27. On June 3, 2013,

---

[2] Plaintiff maintains that Le Relais is "one of the biggest charitable institutions in France that receives donations of used clothes." Pl. Stmt. Facts ¶ 19. Defendant does not dispute that the subject merchandise from Le Relais is donated clothing, but denies that "plaintiff has cited or produced any evidence to establish that all clothing imported from Le Relais is 'used.'" Def.'s Resp. to Pl. Stmt. Facts ¶¶ 19-20. Defendant "[d]enies that plaintiff has provided any evidence to establish that Le Relais is a charity." Def.'s Resp. to Pl. Stmt. Facts ¶ 19. This dispute is not material to the classification of the goods.

Customs notified DIS Vintage that the "review of the samples and prior rulings revealed that the subject [merchandise] 'did not meet the requirements of appreciable wear in order to be classified under HTS 6309.00.0010.'"  Pl. Stmt. Facts ¶ 33; Def.'s Resp. to Pl. Stmt. Facts ¶ 33.  Customs determined that, while some of the samples were classifiable as "[w]orn clothing", other samples were properly classified in a heading in Chapter 61 or 62.  *See*, Def. Stmt. Facts ¶ 29; Pl.'s Resp. to Def. Stmt. Facts ¶ 29.  As such, Customs ascertained that the subject merchandise was "commingled goods" and thus subject to the highest duty rate of any one of the samples, which led to the classification of the subject merchandise under subheading 6204.63.3510 with a duty rate of 28.6 percent.  Pl. Stmt. Facts ¶ 34; Def.'s Resp. to Pl. Stmt. Facts ¶ 34.

Plaintiff timely filed administrative protest 5201-13-100191 challenging Customs' classification of subject merchandise.  Pl. Stmt. Facts ¶ 53; Def.'s Resp. to Pl. Stmt. Facts ¶ 53.  The protest was denied, and on January 13, 2016, plaintiff filed this action with the Court to contest the final decision under section 515 of the Tariff Act of 1930, as amended (19 U.S.C. §1515).  Second Amended Compl., ECF No. 19 ¶¶ 1, 11.

In addition to the 20 samples selected and reviewed by Customs, plaintiff submitted 16 and defendant submitted 5 additional samples to the Court.  Def. Stmt. Facts ¶¶ 43, 50; Pl.'s Resp. to Def. Stmt. Facts ¶¶ 43, 50.  Plaintiff retained possession of four bales from the entry at issue in its warehouse.  Def. Stmt. Facts ¶ 38; Pl.'s Resp. to Def. Stmt. Facts ¶ 38.  The four bales were marked with green inspection tape stating that they had been "examined by U.S. Customs and Border Protection."  Def. Stmt. Facts ¶ 39; Pl.'s Resp. to Def. Stmt. Facts ¶ 39.  On February 24, 2017, "Plaintiff selected and removed four samples from each of the four bales it retained."  Def. Stmt.

Facts ¶¶ 41, 42 (quoting Pl. Ex. 1 (Interrogatories) at 11).  Plaintiff supplied defendant

with pictures of the 16 additional samples during discovery.  Def. Stmt. Facts ¶ 40; Pl.'s

Resp. to Def. Stmt. Facts ¶ 40.

Defendant obtained the five samples that it submitted to the Court during an

inspection on March 14, 2017 of the four bales in plaintiff's possession.  Def. Stmt.

Facts ¶¶ 47, 50; Pl.'s Resp. to Def. Stmt. Facts ¶ 47, 50.  The parties agree that the 41

samples in the Court's possession are representative of the subject merchandise.  Def.

Reply Br. at 14; Pl.'s Resp. to Def. Stmt. Facts ¶¶ 23-24.

## STANDARD OF REVIEW

Customs' protest decisions are reviewed *de novo* on the record before the

Court.  28 U.S.C. § 2640(a)(1).  USCIT Rule 56 permits summary judgment when

"there is no genuine dispute as to any material fact…."  USCIT R. 56(a).  "[A]ll

evidence must be viewed in the light most favorable to the nonmoving party, and all

reasonable factual inferences should be drawn in favor of the nonmoving party."

*Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994)

(citations omitted).  In a dispute over a tariff classification, plaintiff has the burden of

showing that Customs' classification is incorrect.  *Jarvis Clark Co. v. United States*,

733 F.2d 873, 876 (Fed. Cir. 1984).  If plaintiff meets that burden, the court has an

obligation to arrive at "the correct result, by whatever procedure is best suited to the

case at hand."  *Id*. at 878 (footnote omitted).

The Court has "an independent responsibility" to ascertain the proper meaning

and scope of HTSUS terms in a tariff classification dispute.  *Warner-Lambert Co. v.*

*United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005).  Determining whether an

imported item has been properly classified necessitates a two-step process.  *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (Fed. Cir. 1994).  First, the Court must "ascertain[] the proper meaning of specific terms within the tariff provision." *BenQ America Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011) (citations omitted).  Second, the Court needs to "determin[e] whether the merchandise at issue comes within the description of such terms as properly construed."  *Id*.  The first step is a question of law and the second step is one of fact.  *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999).

## LEGAL FRAMEWORK

The General Rules of Interpretation ("GRIs") of the HTSUS govern the proper classification of merchandise coming into the United States.  *Carl Zeiss, Inc. v. United States,* 195 F.3d 1375, 1379 (Fed. Cir. 1999).  GRI 1 requires that classification "be determined according to the terms of the headings and any relative section or chapter notes."  GRI 1.  "Section and chapter notes are not optional interpretive rules, but are statutory law…."  *Aves. in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005) (internal quotations omitted).  "HTSUS terms are construed according to their common commercial meanings."  *Len–Ron Mfg. Co. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003).  To construe a given term, the Court may rely on its own understanding of terms as well as consult sources such as lexicographic and scientific authorities, dictionaries and other reliable information.  *Baxter Healthcare Corp. v. United States*, 182 F. 3d 1333, 1338 (Fed. Cir. 1999).  For additional guidance on the scope and meaning of tariff headings and chapter and section notes, the Court may also look to the Harmonized Commodity Description and Coding System Explanatory

Notes which are developed by the World Customs Organization (WCO).  *Dell Prods.*

*LP v. United States*, 34 CIT 688, 692, 714 F. Supp. 2d 1252, 1257 (2010).  While not

binding law, Explanatory Notes are "generally indicative of the proper interpretation of

a tariff provision."  *Agfa Corp. v. United States*, 520 F.3d 1326, 1239 (Fed. Cir. 2008)

(citation omitted).

## DISCUSSION

In conducting its *de novo* review, first, the court will state the positions of the

parties.  Second, the court will turn to interpreting Heading 6309 "[w]orn clothing and

other worn articles" (collectively, "worn clothing").  To do so, the court will define

"appreciable wear" in Chapter Note 3(i), which requires that "worn clothing" "show signs

of appreciable wear."  The court will also determine whether the requirement in Chapter

Note 3(ii), that "worn clothing" be entered "in bulk or in bales, sacks or similar packings"

(collectively, "in bales"), is a "particular tariff treatment" such that it prevails over the

general rule for commingled goods in General Note 3(f)(i).  Additionally, the court will

address Customs' reliance on past HQ Rulings that applied Heading 6309, specifically

as Customs' reliance on those rulings helped to guide Customs' review with regard to

the samples in the instant case.  Finally, the court will determine that a remand to

Customs is the appropriate remedy in deciding whether the subject merchandise is

classifiable under Heading 6309 or whether the subject merchandise is properly

identified as "commingled goods" and, thus, subject to a rate of duty under an

alternative heading.

## I.  Positions of the Parties

Plaintiff supports classification of the subject merchandise under Heading 6309, which covers "worn clothing."  Pl. Br. at 16.  Specifically, plaintiff contends that the subject merchandise is classifiable under subheading 6309.00.0010, which provides as follows:

> 6309              Worn clothing and other worn articles.
>
> 6309.00.00              Worn clothing and other worn articles.
>
> 6309.00.0010                  Worn clothing.

Plaintiff's proposed criteria for "worn clothing" "permit[s] all used or secondhand clothing with any trace of diminished value or appearance as a result of any previous use, wear, or handling" to satisfy the requirements of Heading 6309.  Pl.'s Combined Reply in Support of Mot. for Summ. J. and Resp. to Def.'s Cross-Mot. for Summ. J., ECF No. 40 ("Pl. Reply Br.") at 6.  In sum, plaintiff's position is that all "used clothing" presented in bales is "worn clothing" under Heading 6309.  Pl. Br. at 25.

Defendant's standard for "worn clothing" requires that an item must "(1) 'show visible damage, impairment or change to its physical condition,' and that change must be (2) the 'result of use.'"  Def. Reply Mem. in Further Support of Cross-Mot. for Summ. J., ECF No. 42 ("Def. Reply Br.") at 6.  Applying this standard, defendant agrees that some of the samples taken from the subject merchandise would have been classifiable as "worn clothing" under Heading 6309 and, as such, duty-free; however, defendant argues that other samples were classifiable under other headings that are dutiable. Def. Br. at 24.

On this basis, defendant concludes that Customs was required to apply General

Note 3(f), which defines "commingled goods" as goods that are subject to different rates

of duty and are mingled together.  Def. Br. at 26-27.  Applying General Note 3(f),

defendant argues that when a shipment is found to be comprised of commingled goods,

the entire shipment is subject to the rate of duty of the sample with the highest rate of

duty from the entry.  Def. Br. at 23.  In this case, Customs determined that at least one

of the samples was classifiable in subheading 6204.63.3510, dutiable at 28.6 percent,

which covers women's trousers and breeches.[3][4]  Def. Br. at 9.

## II.  The Tariff Provision

Heading 6309 covers "[w]orn clothing and other worn articles."  As the positions

of the parties, above, indicate, proper classification of the subject merchandise in this

case hinges on the meaning of "worn clothing."  The term "worn clothing" is not defined

---

[3] The record does not contain an itemized list of the classification determinations within Chapters 61 ("Articles of Apparel and Clothing Accessories; Knitted or Crocheted") and 62 ("Articles of Apparel and Clothing Accessories; Not Knitted or Crocheted") as assigned to each of the 20 samples reviewed by Customs.  The record shows only that Customs determined that subheading 6204.63.3510 was the proper classification for at least one of the samples, which Customs determined to be the highest duty rate among the samples, and, therefore, determined to be the classification for the entire entry.  Def. Br. at 31.

[4] The relevant subheading provides as follows:

| 6204 | Women's or girls' suits, ensembles, suit-type jackets, blazers, dresses, skirts, divided skirts, trousers, bib and brace overalls, breeches and shorts (other than swimwear);  Suits: |
| 6204.63 | Of synthetic fibers: |
| 6204.63.35 | Other. Trousers and breeches. |
| 6204.63.3510 | Women's (648). |

in the HTSUS and has not been defined by this Court.  Chapter Note 3 provides

additional requirements for Heading 6309.

Heading 6309 applies only to the following goods:

 (a) Articles of textile materials:

(i) Clothing and clothing accessories, and parts thereof;

(ii) Blankets and traveling rugs;

(iii) Bed linen, table linen, toilet linen and kitchen linen;

(iv) Furnishings, other than carpets of headings 5701 to 5705 and
tapestries of heading 5805.

(b) Footwear and headgear of any material other than asbestos.

In order to be classified in this heading, the articles mentioned above must
comply with both of the following requirements:

(i) They must show signs of appreciable wear; and

(ii) They must be entered in bulk or in bales, sacks or similar packings.

In sum, for the subject merchandise to be covered by Heading 6309, it must

meet three requirements: (1) be one of the aforementioned articles of textile materials or

specified footwear and headgear; (2) "show signs of appreciable wear"; and, (3) be

entered "in bales."  The parties do not contest that the subject merchandise meets the

first requirement.  Accordingly, the court proceeds to consider the second and third

requirements.

## A.  Show Signs of Appreciable Wear

The first requirement of Chapter Note 3 mandates that the merchandise "show

signs of appreciable wear."  "Appreciable wear" is not defined by the HTSUS and has

not been defined by this Court.

Both parties offer dictionary definitions of "appreciable."  Plaintiff cites WEBSTER'S THIRD NEW INT'L DICT. UNABRIDGED (1993), "capable of being readily perceived or estimated."  Pl. Br. at 25.  Defendant supplies the definition "large enough to be important or clearly noticed."  Def. Br. at 16 (citing COLLINS DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/appreciable (last visited July 16, 2017)).  Defendant also offers, "enough to be perceived or estimated; noticeable; measurable."  Def. Br. at 17  (citing WEBSTER'S NEW WORLD DICTIONARY, THIRD COLLEGE EDITION 67 (1988)).  Based on the definitions provided, defendant asserts that "appreciable" means "visible" in the context of the Chapter Note.  Def. Reply Br. at 9.

While the parties offer different definitions, the definitions share a common thread.  All of the definitions provided support a reading of "appreciable" that is synonymous with "noticeable."  Pl. Br. at 25;  Def. Br. at 16-17.  The definition offered by plaintiff includes the term "*readily* perceived," and the definition offered by defendant includes the term "*clearly* noticed" (emphasis supplied).  *Id*.  Thus, under Heading 6309, "appreciable" means that the quantity or extent of the "wear" matters only insomuch as the "wear" on the merchandise can be *readily* or *clearly* noticed.  In full context, the requirement reads that "[the articles] must *show signs* of appreciable wear" (emphasis supplied).  The phrasing "show signs" bolsters the understanding that for the "wear" to be readily or clearly noticeable, it needs to be visible to eye.

Next, the court turns to defining "wear" in the context of the term "appreciable wear" as it appears in Chapter Note 3.  The parties provided numerous definitions, which fall into two main categories:  (1) a definition offered by plaintiff meaning "the *act*

of wearing" (emphasis supplied); and, (2) various definitions offered by both parties

meaning "the *result* of wear" or "damage" (emphasis supplied).

For the first category, plaintiff offered the definition "[t]he act of wearing or the

state of being worn; use" from the AMERICAN HERITAGE DICTIONARY OF THE ENGLISH

LANGUAGE (2011).  Pl. Br. at 25.  The definition of "wear" as "the act of wearing…" is not

*per se* inconsistent with the term "worn" in the Heading; however, the definition is

inconsistent with Chapter Note 3(i) because "the *act* of wearing" cannot show signs that

are "appreciable."  It would not make sense for "worn" to have one meaning in the

Heading and "wear" to have another meaning in the Chapter Note intending to clarify

the Heading.  Therefore, notwithstanding that "worn" is an adjective in "worn clothing"

and "wear" is a noun in "appreciable wear," the two must share the same underlying

meaning.  In sum, the court concludes that the definition of "wear" as "the act of

wearing" is not supported by the language of Heading 6309 and Chapter Note 3.

None of the definitions in the second category that were offered by both parties is

inconsistent with the language of Heading 6309 and Chapter Note 3.  The definitions

support "worn" as meaning "damaged" or "impaired," and "wear" as meaning "damage"

or "impairment."[5]  In the forthcoming discussion, "wear" will be used to include "wear"

and its corresponding adjective form "worn."

---

[5] Plaintiff offers two definitions: (1) "worn" as "diminished in value or usefulness through wear, use, handling, etc.: worn clothing" RANDOM HOUSE DICT. OF THE ENGLISH LANGUAGE (1973) ("RANDOM HOUSE DICTIONARY definition"); and, (2) "wear" as "The result of wearing or use: diminution or impairment due to use." WEBSTER'S THIRD NEW INT'L DICT. UNABRIDGED (1993).  Pl. Br. at 25.  Defendant offers seven definitions: (1) "worn" as "past participle of wear," "1. Showing the effects of use, wear, etc." and "2. Damaged by use or wear." WEBSTER'S NEW WORLD DICTIONARY, THIRD COLLEGE EDITION *1540 (1988)*; (2) "worn" as "1. Damaged and shabby as a result of much use."  NEW

It is clear from the definitions provided that "wear" has two components: (1) a change involving deterioration; and, (2) how the change came to be. With regard to the first component, a change, the parties disagree as to whether that change has to be a physical change. Plaintiff's preferred definition is one in which "wear" includes a change in "value or usefulness." *See* Pl. Br. at 25-26. However, all other definitions provided by plaintiff and defendant involve a physical change. *See supra* note 5. The court determines that the change involving deterioration is a physical change — damage or impairment. For reasons similar to above, this component of "wear" is supported by the requirement in Chapter Note 3(i) that an article must "show signs of appreciable wear."

The second component of "wear" is how the damage or impairment came to be. The court determines that the physical change comes to be by "use." To "use" a garment means to wear a garment on one's person. In discussing the second component, the court will utilize the word "use" exclusively so as to avoid confusion with the term the court seeks to define: "wear."

In defendant's briefs and at Oral Argument, defendant at times supports having "continued use" be the standard for the second component — how the damage or impairment came to be. Def. Br. at 16-17; Recording of Oral Argument at 37:38-37:45.

---

OXFORD AMERICAN DICTIONARY, THIRD EDITION 1993 (2010); (3) "worn" as "2. Used, as a garment; hence, much used and showing the results of wear." FUNK & WAGNALL'S NEW STANDARD DICTIONARY OF THE ENGLISH LANGUAGE *273* (1952); (4) "worn" as "1. Affected by wear or use," "2. Impaired or damaged by wear or use." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, NEW COLLEGE EDITION *1475-76* (1976); (5) "worn" as "something that is worn looks old and damaged because it has been used a lot." MACMILLAN DICTIONARY; (6) "wear" as "to cause to deteriorate by use…b: to impair or diminish by use or attrition." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY *2589* (1981); and, (7) "wear" as "the verb as 'damage or destroy something by friction or continued use' or the noun as "damage caused by continuous use." OXFORD AMERICAN DICTIONARY AND THESAURUS, SECOND EDITION *1484.* Def. Br. at 15-16.

Customs has also offered "continued use" as the standard for this component since issuing HQ 960577 in 1998.  Customs Ruling Letter, HQ 960577 (Aug. 7, 1998).

      The court determines that "continued use" is not necessary, "use" is sufficient, and "use" is the correct definition for the second component of the meaning of "wear." The court reaches this conclusion because the first component of "wear" requires physical damage or impairment.  If "use" is not sufficient to cause damage or impairment, then the merchandise will not and should not meet the definition of "wear."

      Plaintiff favors a definition of "wear" in which "handling" is one means by which the wear may occur.  Pl. Br. at 26.  Plaintiff relies on the RANDOM HOUSE DICTIONARY definition to argue that the first component — *viz.*, the physical change — can come from something other than "use," namely "packing, shipping, and handling."[6]  Pl. Reply Br. at 11.  Defendant points to Explanatory Note 63.09 to support its contention that damage or impairment from handling does not have a place within the definition of "worn clothing."  Def. Br. at 16.  Explanatory Note 63.09 states:

> To be classified in this heading the articles…must comply with both of the following requirements.  If they do not meet these requirements, they are classified in their appropriate headings.

---

[6] Related to this point, plaintiff argues that the "in bales" requirement of Chapter Note 3(ii) diminishes the appearance of the clothing.  Pl. Reply Br. at 11.  Plaintiff points to clothing being "disheveled and wrinkled as a result of being pressure-crammed into bales."  Pl. Reply Br. at 11.  Essentially, plaintiff argues that the "in bales" requirement makes the clothing contained therein show "appreciable wear."  *Id*.  This logic is circular and would mean that any clothing arriving "in bales" *per se* satisfies both requirements of Heading 6309.  Chapter Note 3 and Explanatory Note 63.09 make clear that articles having to "show signs of appreciable wear" and to be entered "in bales" are two separate requirements.  *See* Chapter Note 3; Explanatory Note 63.09.  The "in bales" requirement cannot impart "appreciable wear" onto the articles.

(A)  They must show signs of appreciable wear, whether or not they require cleaning or repair before use;  New articles with faults in weaving, dyeing, etc., and shop-soiled articles are excluded from this heading.

(B)  They must be presented in bulk (e.g., in railway goods wagons) or in bales, sacks or similar bulk packings, or in bundles tied together without external wrapping, or packed roughly in crates.…[7]

Defendant argues that subsection A is "a list of items *damaged other than by use*."  Def. Br. at 16 (emphasis in original).

The court finds this explanation convincing.  "New articles with faults" are items with damage or impairment caused by manufacturing.  Dictionary definitions of the term "shop-soiled" indicate that the damage or impairment is caused to items from being on display, or handled, in a store.[8]  While Explanatory Notes are not binding on this Court, they are persuasive, and further support the court's determination that the second component of the term "wear" requires that the damage or impairment be by "use."  In sum, the court determines that the term "appreciable wear" *is noticeable damage or impairment caused by use*.

---

[7]  All citations to the Explanatory Notes are to the 2012 edition.  *See* World Customs Org., Harmonized Commodity Description and Coding System.

[8]  "Shopsoiled: 1. Worn, faded, tarnished, etc. from being displayed in a shop or store. US equivalent: shopworn."  (COLLINS DICTIONARY, https://www.collinsdictionary.com/dictionary/english/shopsoiled (last visited April 14, 2020)).  "Shop-soiled: 1. If goods sold in shops are shop-soiled, they are slightly dirty or damaged and therefore reduced in price."  (CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/shop-soiled (last visited April 14, 2020)).  "Shopworn:  1. If clothes or other goods in a store are shopworn, they look slightly damaged or dirty, especially because they have been used in a display."  (MACMILLAN DICTIONARY, https://www.macmillandictionary.com/us/dictionary/american/shopworn (last visited April 14, 2020)).

## B.  Entered in Bulk or in Bales, Sacks or Similar Packings

The third requirement in Chapter Note 3 is that "worn clothing" be entered "in bulk or in bales, sacks or similar packings."  The parties agree on what it means for articles to be entered "in bales."  However, plaintiff challenges the justification provided by Customs for its determination that the subject merchandise is commingled goods. Plaintiff bases its challenge on the grounds that the "in bales" requirement is a "particular tariff treatment" that supersedes Customs' authority to apply the general rule for commingled goods.  *See* Pl. Br. at 28-29.  Plaintiff argues in particular that the weight and packaging requirements in Heading 6309 constitute a particular tariff treatment.  Recording of Oral Argument at 32:20-32:59.

> The relevant parts of HTSUS General Note 3(f) are as follows:
>
> (i) Whenever goods subject to different rates of duty are so packed together or mingled that the quantity or value of each class of goods cannot be readily ascertained by customs officers (without physical segregation of the shipment or the contents of any entire package thereof), by one or more of the following means: (A) sampling, (B) verification of packing lists or other documents filed at the time of entry, or (C) evidence showing performance of commercial settlement tests … the commingled goods shall be subject to the highest rate of duty applicable to any part thereof unless the consignee or his agent segregates the goods pursuant to subdivision (f)(ii) hereof.
>
> …
>
> (v) The provisions of subdivision (f) of this note shall apply only in cases where the tariff schedule does not *expressly provide* a particular tariff treatment for commingled goods.

General Note 3(f) (emphasis supplied).  General Note 3(f)(v) declares that the HTSUS must "*expressly provide* a particular tariff treatment" and that if a "particular tariff treatment" is provided, that tariff treatment would take precedence over the default "commingled goods" rule of General Note 3(f)(i) (emphasis supplied).

A "particular tariff treatment" is "expressly provide[d]" by the HTSUS when goods
subject to different rates of duty are so mingled that a classification as commingled
goods would be appropriate, but for the HTSUS providing a specific tariff provision for
the goods.  *See Amoco Oil Co. v. United States*, 749 F.2d 1576 (Fed. Cir. 1984) (where
the Court of Appeals for the Federal Circuit ("CAFC") affirmed this Court's decision to
uphold the determination by the U.S. Customs Service ("USCS," the agency
predecessor to Customs) that the merchandise of plaintiff Amoco was not "commingled
goods"); *see also* General Note 3(f).  In *Amoco Oil*, Amoco imported a mixture of center-
cut natural gas liquids (NGLs) and propane ("Amoco Mixture").  *Amoco Oil Co.* at 1577-
1578.  NGLs and propane each received duty-free treatment under the predecessor to
the HTSUS, the Tariff Schedule of the United States ("TSUS").[9]  Amoco argued that the
Amoco Mixture was "commingled goods" under General Heading 7 (the TSUS
equivalent to General Note 3(f)) and subject to classification under either heading.[10]
Instead, the USCS classified the Amoco Mixture under TSUS 430.00, which covered

---

[9] Under the TSUS, propane was classified under Heading 475.15 and NGLs under
475.70.
[10]  TSUS, General Heading 7, stated as follows:
   "7. Commingling of articles:
   (a) Whenever articles subject to different rates of duty are so packed
   together or mingled that the quantity or value of each class of articles
   cannot be readily ascertained by customs officers (without physical
   segregation of the shipment or the contents of any entire package thereof),
   by one or more of the following means … the commingled articles shall be
   subject to the highest rate of duty applicable to any part thereof unless the
   consignee or his agent segregates the articles pursuant to subdivision (b)
   hereof.
   …
   (e) The provisions of this headnote shall apply only in cases where the
   schedules do not expressly provide a particular tariff treatment for
   commingled articles."

"mixtures of two or more organic compounds."  This provision carried a duty rate of 5 percent *ad valorem*.

The CAFC found that by the terms of General Heading 7, the Amoco Mixture could not be "commingled goods" because the "highest rate rule is applicable only where articles subject to different rates of duty are commingled."  *Id*. at 1580. Additionally, the CAFC noted "that case law supports the conclusion that where merchandise is determined to be a mixture, the commingling headnote does not apply." *Id*.  Therefore, *Amoco Oil* suggests that a mixture of two goods, provided for in a specific tariff provision, is an example of a "particular tariff treatment."

Plaintiff asserts that "[a] tariff heading that requires massive amounts of clothing with uncertain quantities to be mixed together in a specific type of packaging qualifies as a 'particular' treatment for commingled goods."  Pl. Br. at 29.  Plaintiff finds it significant that importers have "no choice" in packaging if they want their merchandise to enter duty-free under Heading 6309.  *Id*.  Plaintiff seeks to differentiate Heading 6309 from other headings pertaining to articles of clothing by pointing out that no other articles classified under Chapters 61 or 62 are required to be entered "in bales."  *Id*.

Defendant offers two points in response.  First, defendant argues that the "in bales" language is a packaging requirement, not a tariff treatment.  Def. Reply Br. at 13. Defendant adds that "a packaging requirement does not dictate that all goods in the same package receive the same tariff treatment."  *Id*.  Second, defendant notes that the packaging requirement in Heading 6309 is the second of two requirements for classification under that Heading.  *Id*.  Defendant argues that "to apply [Chapter] Note 3 in the manner that plaintiff suggests would eviscerate the first independent

requirement," *id.*:  *viz.*, that every article "show signs of appreciable wear."  Chapter

Note 3(i).  In other words, defendant argues that plaintiff's reading would lead to the

result that any clothing, so long as it was imported "in bales," would be eligible for duty-

free treatment, regardless of whether the clothing showed "signs of appreciable wear."

         The court determines that the requirement that an article be entered "in bales"

and by weight is not a "particular tariff treatment."  The HTSUS contains other tariff

provisions that include packing requirements, which, similarly, do not constitute a

particular tariff treatment.[11]  Conversely, the HTSUS contains particular tariff

treatments.[12]  Finally, if the "in bales" requirement of Heading 6309 were treated as a

"particular tariff treatment" within the meaning of General Note 3(f)(v), that treatment

would render the first requirement of Heading 6309 — that the articles "show signs of

appreciable wear" — a nullity, contrary to basic precepts of statutory interpretation.[13]  In

conclusion, "worn clothing" under Heading 6309 is merchandise that complies with the

---

[11]  For example: subheading 1604.14.40, "Prepared fish…tunas, skipjack, and
bonito…In bulk or in immediate containers weighing with their contents over 6.8 kg
each…"; subheading 1806.20.20, "Chocolate and other food preparations containing
cocoa…Other preparations in blocks, slabs or bars, weighing more than 2 kg or in
liquid, paste, powder, granular or other bulk form in containers or immediate packings,
of a content exceeding 2 kg … In blocks or slabs weighing 4.5 kg or more each;" and,
subheading 0804.30.20, "Pineapples, fresh or dried, not reduced in size: in bulk."
[12]  At Oral Argument, defendant offered "mixed vegetables" in subheading 0712.90.85
and "mixed nuts" in subheading 0813.50.00 as examples of items that could be
considered "commingled goods" under General Note 3(f), but are not, because
particular tariff provisions are provided for these items in the HTSUS.  Recording of Oral
Argument at 25:15-26:01.
[13]  "The cardinal principle of statutory construction is to save and not to destroy.  It is our
duty to give effect, if possible, to every clause and word of a statute…."  *United States v.
Menasche*, 348 U.S. 528, 538-539 (1955) (internal citations and quotations omitted).
*See also* "The rules of statutory construction require a reading that avoids rendering
superfluous any provision of a statute."  *Ishida v. United States*, 59 F.3d 1224, 1230
(Fed. Cir. 1995) (internal citation omitted).

three requirements of Chapter Note 3, including the above definition of "appreciable wear."

## III.  Classification of the Subject Merchandise

The subject merchandise is comprised of 443 bales of secondhand clothing.  Pl. Br. at 2.  There are 41 samples in the court's possession.  It is not disputed that the subject merchandise is comprised of articles of textile materials or the specified footwear or headgear as required under Chapter Note 3.  It is also not disputed that the subject merchandise arrived "in bales," under Chapter Note 3(ii).  Classification, therefore, of the subject merchandise hinges on the requirement of Chapter Note 3(i) — whether the samples of the subject merchandise "show signs of appreciable wear."

### A.  Customs' Rulings and Guidance Pertaining to "Show Signs of Appreciable Wear" Are Inconsistent with Heading 6309

The court defined "appreciable wear" as noticeable damage or impairment caused by use.  *See supra* Section II.A.  In this case, Customs' determination of whether the samples "show signs of appreciable wear" "was based, in part, on a review of Customs rulings, including rulings interpreting heading 6309…."  Answer, ECF No. 23 ¶ 39.  In particular, on June 3, 2013, Customs issued a Notice of Action advising plaintiff that Customs was relying on several past Customs and USCS rulings, including HQ960577, HQ967718, HQ968010 and HQ967814:

> Review of samples from entry AFP-1304309-5 and Headquarters rulings HQ960577, HQ967718, HQ968010 and HQ967814, revealed that the merchandise imported does not meet the requirements of appreciable wear in order to be classified under HTS 6309.00.0010/Free. The imported garments are classifiable under Chapter 61 or 62. The commingled garments are subject to the appropriate provision of Chapter 61 or 62 for which the highest duty rate applies. The entries will be liquidated at the highest duty rate of the commingled goods under HTS 6204.63.3510 at 28.6%.

Second Amended Compl. ¶ 21.[14]

In HQ 960577 (the "1998 ruling"), the USCS explained "appreciable wear" as follows: "In essence, appreciable wear is descriptive of a garment or other article whose appearance has noticeably changed from its original/new/unused stage. This change in appearance must be the result of the various naturally occurring stages to which a fabric succumbs as a result of continuous use." Customs Ruling Letter, HQ 960577 (Aug. 7, 1998) ("1998 ruling") at 9. In the 1998 ruling, USCS reviewed 16 garments in an attempt to provide guidance for importers regarding what merchandise qualifies for classification within Heading 6309. Fourteen of the garments were determined to not have "appreciable wear" because they did not "exhibit fabric which is greatly stressed or fabric which reflects the physical deterioration resulting from continued use." *Id*. at 11.

The 1998 ruling by the USCS is inconsistent with Heading 6309 because, as settled in Section II, the definition for the first component of "wear" is "damage or impairment." Damage or impairment within the meaning of Heading 6309 may include "fabric which is greatly stressed or fabric which reflects physical deterioration resulting from continued use"; however, neither of those elements — greatly stressed fabric, or fabric reflecting physical deterioration resulting from continued use — is necessary to find "damage or impairment" within the meaning of Heading 6309.

Heading 6309 and Chapter Note 3 also do not require that the damage or impairment occur only to a garment's *fabric* to meet the definition of "appreciable wear."

---

[14]  *See also* "Admits that plaintiff correctly quotes portions of the CBP Form 29, Notice of Action, issued on June 3, 2013; however, avers that the CBP Form 29, Notice of Action speaks for itself and is the best evidence of what is provided therein." Answer ¶ 21.

The language of Heading 6309 and Chapter Note 3 permit the possibility that damage

to something other than fabric can comprise "appreciable wear."  As defendant

conceded at Oral Argument, the damage may be to *any* part of the garment—not only

the fabric.[15]  With respect to the second component of "wear" — how the damage or

impairment came to be — "use" is the appropriate definition, not "resulting from

*continued* use" as offered by the 1998 ruling. 1998 ruling at 9 (emphasis supplied).  As

shown, the "practical understanding" of "appreciable wear" that USCS offers in the 1998

ruling is not supported by the Heading or Chapter Note 3.

　　The 1998 ruling has informed Customs' treatment of secondhand clothing for

more than two decades and has been in force and applied by subsequent rulings and

guidance.  HQ967718 and HQ967814 in 2005, and HQ 968010 in 2006 relied heavily

on the 1998 ruling.  The 1998 and 2006 rulings also culminated in guidance issued in

2014 by Customs.  This guidance, addressed by both parties in this action, provides (in

relevant part):

> Heading 6309 in the Harmonized Tariff Schedule (HTS) allows previously worn
> clothing entering the U.S. to enter free of duty.  However, most shipments of
> "used clothing" imported commercially for sale would not be eligible for the
> provision 6309.  In order to qualify for the provision 6309, the goods must show
> clear signs of appreciable wear (be in poor condition) and must be entered in
> bulk or in bales, sacks or similar packing.  *The assumption is that clothing
> imported under this provision will most likely be used as rags or other non-
> apparel purpose.*

Pl. Br. Exhibit A (emphasis supplied).

　　This guidance has been in effect for a number of years.  Defendant stated that

the guidance was posted in several different places.  Defendant also asserted that the

---

[15] "We don't contend that the damage has to be to the fabric, the damage from the
continued use has to be to the article."  Recording of Oral Argument at 37:38-37:45.

guidance was intended to be removed "several years ago."  Recording of Oral

Argument at 48:27 – 50:55.  However, defendant further stated that, as of February 21,

2020, the guidance remained posted.  *Id*.[16]

The court determines that the 2014 guidance is inconsistent on its face with

Heading 6309.  In fact, Customs' guidance meets the definition of an entirely different

provision of the HTSUS, Heading 6310.  Heading 6310 covers "used or new rags… and

worn out articles of twine, cordage, rope or cables, of textile materials."  In short,

Customs has been erroneously applying Heading 6309 for at least 22 years, including

as represented in the 1998 and 2006 rulings and in the 2014 guidance.

### B.  Subject Merchandise as "Commingled Goods"

As discussed in Section II.B, above, General Note 3(f) sets out the general rule

for "commingled goods."  General Note 3(f) requires that the goods are: (1) "subject to

different rates of duty;" (2) "so packed together or mingled;" and, (3) that the "quantity or

value of each class of goods cannot be readily ascertained by … (A) sampling, (B)

verification of packing lists …."  If these conditions are met, "the commingled goods

shall be subject to the highest rate of duty applicable to any part thereof unless the

consignee or his agent segregates the goods pursuant to subdivision (f)(ii) hereof."

In the instant case, at least two of the three requirements are met.  The court will

address requirements (2) and (3) at the outset.  The court determines that the subject

merchandise is "so packed together or mingled" — having arrived in 100-pound and

---

[16] Defendant stated at Oral Argument that defendant removed the guidance in February 2020.  Defendant also sought to emphasize that, from its perspective, this guidance does not represent the position of the Government, notwithstanding that it remained in place until February 2020.  *Id*.

1000-pound bales, whether the bales were "loosely packed" or "compressed" — as to

not be segregable.  The court further establishes that the "quantity or value of each

class of goods cannot be readily ascertained" because the subject merchandise may be

composed of a potentially voluminous number of classes.  The subject merchandise is

composed of articles that if determined not to be "worn clothing" under Heading 6309,

are properly classified under various provisions in Chapters 61 or 62, which carry

varying rates of duty based on the type of garment and the type of fabric.  *See* Def. Br.

at 28-29.

    With respect to the first requirement, it is possible that some of the samples of

the subject merchandise may be classifiable at different duty rates.  However, because

Customs misapplied Heading 6309 and Chapter Note 3 to the samples, a determination

with respect to this requirement would be premature.  Therefore, a determination as to

whether the subject merchandise comprises "commingled goods" is also premature.

## IV.  Remedy

    The Court "may order such further administrative or adjudicative procedures as

the court considers necessary to enable it to reach the correct decision."  28 U.S.C. §

2643(b).  *See United States v. UPS Customhouse Brokerage, Inc.*, 34 CIT 96, 128, 686

F. Supp. 2d 1337, 1365-1366 (2010) (internal citations omitted) (*holding* that remand is

within the Court's discretion and a case should be remanded "when doing so will assist

the Court in reaching the correct result").  In a civil action, the Court may order any form

of appropriate relief, including an order of remand.  28 U.S.C. § 2643(c)(1).  "When an

administrative agency has made an error of law, the duty of the Court is to correct the

error of law committed by that body, and after doing so to remand the case to the

agency so as to afford it the opportunity of examining the evidence and finding the facts as required by law." *NLRB v. Enterprise Ass'n of Steam*, 429 U.S. 507, 522 (1977) (internal quotations and citations omitted).  The reviewing court must ensure "not [to] intrude impermissibly on the authority of the administrative agency by itself taking action that implicates the agency's expertise and discretion." *Int'l Light Metals v. United States*, 279 F.3d 999, 1003 (Fed. Cir. 2002).  Whether the Court should remand a case to an administrative agency to correct an error of law "necessarily turns upon the precise issues the reviewing court has decided and what questions remain for the agency to decide on remand." *Id.*

The court determines that Customs committed an error of law in interpreting Heading 6309 and Chapter Note 3.  Accordingly, the court concludes that a remand to Customs pursuant to 28 U.S.C. § 2643 is appropriate.

## CONCLUSION

Upon meeting their new nanny, Mary Poppins, Jane and Michael Banks show Mary Poppins the nursery and her new room.[17]  Mary Poppins is wearing a long dress, with an overcoat, a pink scarf and a hat with flowers.  She is holding an umbrella and carrying a large bag.

Michael notices Mary Poppins' bag: "That's a funny sort of bag."

Mary Poppins: "Carpet."

Michael: "You mean to carry carpets in?"

Mary Poppins: "No.  Made of."

---

[17] Walt Disney's MARY POPPINS (1964), based on the book series MARY POPPINS (1933 – 1962) by P. L. Travers (Pamela Lyndon Travers, OBE, born Helen Lyndon Goff).

Jane: "This is your room, and there's a lovely view of the park."

Mary Poppins: "Hmm.  Well, it's not exactly Buckingham Palace.  Still, it's clean.
Yes, I think it will be quite suitable.  Just needs a touch here and there.  Well, first things
first.  I always say, the place to hang a hat is on a hat stand."  Mary Poppins pulls a six-
foot tall hat stand out of her bag whilst Jane and Michael stare in amazement, then peer
inside Mary Poppins' empty bag and turn it upside down.  "Ah!  This will never do!"
Mary Poppins says, removing a small mirror from the wall.  "I much prefer seeing *all* of
my face at the *same time*."  Mary Poppins pulls a large mirror out of her bag.

Michael, amazed again: "There — but there was nothing in it!"

Mary Poppins: "Never judge things by their appearance.  Even carpetbags.  I'm
sure *I* never do."  Mary Poppins pulls out a three-foot tall plant: "A thing of beauty is a
joy forever."  Michael, looking under the table on which Mary Poppins has placed her
bag, seeing nothing there.  Mary Poppins pulls out a five-foot tall lamp, a pair of shoes
and jacket.

Michael to Jane: "We better keep our eye on this one."

In this instant case, the court remands to Customs for it to keep its eye on the
subject merchandise and take the following steps in conformity with this decision:  (1)
examine and apply Heading 6309 and Chapter Note 3 to the 41 samples of subject
merchandise to determine the appropriate classification of each sample; and, (2) if
Customs determines that the subject merchandise is "commingled goods" pursuant to
General Note 3(f), Customs shall then apply the highest rate of duty for any one of the
samples to the subject merchandise.

For the foregoing reasons, it is hereby

**ORDERED** that consideration of the parties' cross-motions for summary judgment is stayed; it is further

**ORDERED** that this matter is remanded to Customs to determine the appropriate classification and rate of duty in conformity with this decision; it is further

**ORDERED** that remand results are due within 90 days of the date of this decision; it is further

**ORDERED** that any comments on the remand results shall be submitted within 30 days of the filing of the results; and it is further

**ORDERED** that any replies to the comments are due 15 days thereafter.

/s/ Timothy M. Reif
Timothy M. Reif, Judge

Dated:    May 6, 2020
              New York, New York