Slip Op. 21-61

## UNITED STATES COURT OF INTERNATIONAL TRADE

**DIS VINTAGE LLC**,

Plaintiff,

v.

**UNITED STATES**,

Defendant.

Before: Timothy M. Reif, Judge

Court No. 16-00013

## <u>OPINION</u>

[Denying plaintiff's Motion for Summary Judgment, granting defendant's Cross Motion for Summary Judgment in part and ordering that Customs classify the subject merchandise as "commingled goods" and subject to the duty rate of 16.6% ad valorem because the samples with the highest duty rate applicable are classifiable in subheading 6203.42.40.]

Dated: <u>May 17, 2021</u>

<u>Peter S. Herrick</u>, Peter S. Herrick, P.A., of St. Petersburg, FL, for plaintiff DIS Vintage LLC.

<u>Monica P. Triana</u>, Trial Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of New York, NY, for defendant United States.  With her on the brief was <u>Jeffrey Bossert Clark</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, <u>Justin R. Miller</u>, Attorney-In-Charge, International Trade Field Office and <u>Aimee Lee</u>, Assistant Director of New York, NY.  Of Counsel was <u>Sheryl A. French</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Reif, Judge: Pursuant to the court's Order of June 15, 2020, DIS Vintage LLC

("plaintiff" or "DIS Vintage") and the United States ("defendant" or "Government")

submitted supplemental summary judgment briefs on the tariff classification of 443

bales of secondhand clothing (the "subject merchandise") imported into the United

States by DIS Vintage.  *See DIS Vintage LLC v. United States*, 44 CIT __, __, 456 F.

Supp. 3d 1323 (2020) ("*DIS Vintage I*"); Order of June 15, 2020, ECF No. 62 at 1-2;

Def.'s Supp. Summ. J. Br., ECF No. 66 ("Def. Supp. Br."); Pl.'s Supp. Summ. J. Br.,

ECF No. 75 ("Pl. Supp. Br."); Def.'s Reply to Pl.'s Supp. J. Br., ECF No. 76 ("Def. Supp.

Reply Br.").

 In *DIS Vintage I*, the court determined the meaning of the requirement that

merchandise "show signs of appreciable wear" to be classified as "worn clothing and

other worn articles" in Heading 6309 of the Harmonized Tariff Schedule of the United

States ("HTSUS").  *See DIS Vintage I*, 456 F. Supp. 3d at 1331.  However, the court did

not decide on the appropriate tariff classification of the subject merchandise.  *Id*. at

1339-1340.  In part, the court requested further briefing from the Government on the

appropriate classification for each of the 41 samples of the subject merchandise so that

the court could determine the appropriate rate of duty.  Order of June 15, 2020, ECF

No. 62 at 1-2 ("Order of June 15, 2020").  The court directed plaintiff to limit its response

only to the Government's classifications.  *Id.*

 The Government conducted an analysis of each of the 41 samples applying "the

Court's analysis of [Heading 6309] set forth in [*DIS Vintage I*]."  Def. Supp. Br. at 4.  The

Government identified alternative classifications, as instructed by the court in the Order

of June 15, 2020, for samples determined to be classified under Heading 6309.  *Id*.  The

Government argues that the 41 samples have varying duty rates and, therefore, that the

subject merchandise should be classified as "commingled" and "subject to the highest

rate of duty for any part thereof."  *See* Supp. Def. Br. at 1; *see also* General Note 3(f).

DIS Vintage argues that all 41 samples are "worn," and, therefore, that the subject merchandise should be classified under Heading 6309 and should be "duty free."  Pl. Supp. Br. at 3.  Parties agree that the 41 samples are representative of the subject merchandise.  *See DIS Vintage I*, 456 F. Supp. 3d at 1328.  Therefore, the classification of the samples dictates the classification of the subject merchandise.

For the first time, DIS Vintage also raises an alternative argument should the court determine that the subject merchandise is commingled.  If the court so concludes, plaintiff urges that the subject merchandise "not [be] dutiable at the 'highest rate of duty applicable to any part thereof'" because, DIS Vintage asserts, it did not have the chance to address the issue of commingling and, therefore, the exceptions to commingling.  Pl. Supp. Br. at 8.  Plaintiff further argues that its merchandise falls under two exceptions to commingling: General Note 3(f)(iii) and General Note 3(f)(iv).  *Id*. at 8.  The Government responds that plaintiff should be precluded from raising this alternative argument because plaintiff's argument is outside the scope of the court's request, that plaintiff had a prior opportunity to raise this argument and that waiver, prejudice and impossibility apply.  Def. Supp. Reply Br. at 1-13.

The court continues to exercise jurisdiction over this action under 28 U.S.C. § 1581(a).

The court declines to consider plaintiff's alternative argument because consideration will not aid the court in the proper classification of the subject merchandise.  *See Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).  Further, the plaintiff's alternative argument is outside the scope of the Order of

June 15, 2020, in which the court requested the information that it needed to reach the correct classification for the subject merchandise.

The court's classification of the 41 samples hinges on parties' dispute with regard to the classification of 25 samples.[1]  Of the 25 samples, the court finds that 16 samples are "worn" under Heading 6309 and that the remaining 9 samples are properly classified under other subheadings of the HTSUS of varying rates of duty.  The "highest duty rate" of the 9 samples is 16.6% *ad valorem*.[2]  Accordingly, and for the reasons set forth below, the court holds that the subject merchandise is composed of goods subject to different rates of duty and, therefore, "commingled" pursuant to General Note 3(f)(i).  As such, the subject merchandise has the duty rate of 16.6% *ad valorem*, which is the "highest rate of duty to any part thereof."  General Note 3(f)(i).

## BACKGROUND

In its initial decision on this case, the court explained that to be classified in Heading 6309, articles "must meet three requirements: (1) be one of the [specified] . . . articles of textile materials or specified footwear and headgear; (2) 'show signs of appreciable wear'; and, (3) be entered 'in bales.'"  *DIS Vintage I*, 456 F. Supp. 3d at 1331.  The court identified the requirements for goods to be considered "commingled" pursuant to General Note 3(f)(i) and determined that the exception in General Note 3(f)(v) for "a particular tariff treatment for commingled goods" that plaintiff identified in its

---

[1] Parties agree that the proper classification for 16 of the 41 samples is under Heading 6309.  *See* Declaration of Kimberly Wachtel, ECF No. 66-1; *see also* Declaration of Daniel Sabban, ECF No. 75-1.

[2] Exhibit 2, Exhibit 3 and Exhibit 29 fall under subheading 6203.42.40 with a duty rate of 16.6% *ad valorem*.

summary judgment motion was not applicable to Heading 6309.  *Id.* at 1334-36.  The

court stayed cross-motions for summary judgment and remanded to U.S. Customs and

Border Protection ("Customs") to determine the classification and appropriate rate of

duty in conformity with the decision.  *Id.* at 1340.

   Pursuant to U.S. Court of International Trade (USCIT) Rule 59, the Government

moved for rehearing of the portion of *DIS Vintage I* that required the matter to be

remanded to Customs and requested that the parties be allowed to supplement the

record so that the court could properly classify the 41 samples without an administrative

remand.  Def.'s Mot. for Rehearing, ECF No. 61.  The Government also requested that

the parties be allowed to submit supplemental Rule 56 summary judgment briefs.  *Id.*

   The court granted the motion for rehearing and withdrew the portion of *DIS*

*Vintage I* that remanded the case to Customs.  Order of June 15, 2020, ECF No. 62 at

1.  In the Order of June 15, 2020, the court requested from the Government information

"*only*" on:

> (1) the proper tariff classification of each of the 41 samples of the subject
> merchandise in light of the court's legal determinations in [*DIS Vintage I*], and
> where defendant classifies a sample under the U.S. Harmonized Tariff Schedule
> (HTSUS) Heading 6309, defendant shall also identify an alternative classification
> in HTSUS Chapter 61 or 62 for each of the samples to inform the court, should
> the court determine that classification under Chapter 61 or 62, rather than under
> Heading 6309, is appropriate; (2) whether, based on the classifications of the
> samples, the merchandise at issue shall be considered 'commingled' pursuant to
> General Note 3(f); and, (3) if the merchandise at issue is considered
> 'commingled,' the appropriate rate of duty of the commingled goods. . . .

*Id.* (emphasis underlined in original).

   The court further directed "that plaintiff shall have 30 days to respond to the

Government's submission stating *only* with which, if any, of defendant's classifications

or alternative classifications . . . plaintiff disagrees, and stating plaintiff's proffered

classifications and justifications consistent with the legal determinations in [*DIS Vintage I*] for each of those samples." *Id.* at 2 (emphasis underlined in original).  Additionally, the court asked defendant to respond within 15 days "to plaintiff's submission *only* with respect to the classifications or alternative classifications proffered by plaintiff in its response." *Id.* (emphasis underlined in original).

## STANDARD OF REVIEW

The appropriate standard of review for cases contesting the denial of a protest is de novo.  *Lerner N.Y., Inc. v. United States*, 37 CIT 604, 606-607, 908 F. Supp. 2d 1313, 1317-18 (2013) (holding "[i]n cases contesting the denial of a protest, the court makes its findings of fact *de novo* based upon the record made before the court, 28 U.S.C. § 2640(a).") (emphasis in original).  The Federal Circuit has recognized that "[t]he plaintiff has the burden of establishing that the government's classification of the subject merchandise was incorrect but does not bear the burden of establishing the correct classification; instead, it is the court's independent duty to arrive at 'the *correct* result, by whatever procedure is best suited to the case at hand.'" *Id.* (citing *Jarvis*, 733 F.2d at 878) (emphasis in original).  The court should find "the proper classification of the subject merchandise even if the proper classification has not been raised by the parties." *Cummins Inc. v. United States*, 29 CIT 525, 541, 377 F. Supp. 2d 1365, 1380 (2005) (citing *Jarvis*, 733 F.2d at 878).

## LEGAL FRAMEWORK

### I.    General

The General Rules of Interpretation ("GRIs") and the Additional U.S. Rules of Interpretation govern the classification of merchandise under the HTSUS.  *Link Snacks,*

*Inc. v. United States*, 742 F.3d 962, 965 (Fed. Cir. 2014); *see also Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999).  In accordance with GRI 1, "classification shall be determined according to the terms of the headings and any relevant section or chapter notes. . . ."  GRI 1.

## II.      General Note 3(f) on Commingling

General Note 3(f)(i) of the HTSUS states: "Whenever goods subject to different rates of duty are so packed together or mingled that the quantity or value of each class of goods cannot be readily ascertained by customs officers (without physical segregation of the shipment or the contents of any entire package thereof). . . the commingled goods shall be subject to the highest rate of duty applicable to any part thereof . . . ."  General Note 3(f)(i).

General Note 3(f) explicitly includes four exceptions for when commingled goods should not be subject to the highest rate of duty applicable.

First, General Note 3(f)(i) states that commingled goods will not be subject to the highest rate of duty if "the consignee or his agent segregates the goods pursuant to subdivision (f)(ii) hereof."  General Note 3(f)(i).  General Note 3(f)(ii) explains the procedural requirements for segregating the goods.  General Note 3(f)(ii).

Second, General Note 3(f)(iii) explains that "the foregoing provisions of subdivision (f) of this note do not apply with respect to any part of a shipment if the consignee or his agent furnishes . . . satisfactory proof . . . that such part (1) is commercially negligible, (2) is not capable of segregation without excessive cost and (3) will not be segregated prior to its use in a manufacturing process or otherwise, and . . . that the commingling was not intended to avoid the payment of lawful duties."  General

Note 3(f)(iii).  If such proof is furnished, the goods "shall be considered for all customs

purposes to be dutiable at the rate applicable to the material present in greater quantity

than any other material."  *Id.*

Third, General Note 3(f)(iv) contains nearly identical language to General Note

3(f)(iii) but requires satisfactory proof "that the value of the commingled goods is less

than the aggregate value would be if the shipment were segregated" instead of proof

that such part is commercially negligible.  General Note 3(f)(iv).

Fourth, General Note 3(f)(v) notes that "the provisions of subdivision (f) of this

note shall apply only in cases where the tariff schedule does not expressly provide a

particular tariff treatment for commingled goods."  General Note 3(f)(v).

## DISCUSSION

**I.     Whether the Court Considers Plaintiff's Argument of Not Having an
        Opportunity to Address the Issue of Commingling and the Applicability of
        General Note 3(f)(iii) and (iv)**

Plaintiff contends that even if the imported goods are considered commingled,

"they are not dutiable at the 'highest rate of duty applicable to any part thereof'" because

DIS Vintage did not have the chance previously to address the issue of commingling as

Customs failed to provide adequate notice pursuant to HQ 957322.  Pl. Supp. Br. at 8.

Plaintiff urges the court to remand the case to Customs to give plaintiff the opportunity

to address the issue of commingling or, in the alternative, urges the court itself to

address the commingling issue by concluding that the commingled goods fall under

either exception in General Note 3(f)(iii) or (iv).  *Id*. at 9-10.

The court is attentive to its duty to arrive at the "correct result" with respect to the

proper classification of the subject merchandise.  *See Jarvis*, 733 F.2d at 878.  The

court would be prepared to consider plaintiff's new argument if it would aid the court in reaching the correct result.  *See Arthur J. Humphreys, Inc. v. United States*, 15 CIT 427, 427, 771 F. Supp. 1239, 1241 (1991) (interpreting the "obligation to reach the correct result" in *Jarvis* to allow the court to consider, "in its discretion," several new arguments and clearer articulations of previous arguments from a party when it raised them during the rehearing stage of the litigation).  However, in this case, the court concludes that plaintiff's additional argument will not help the court classify the subject merchandise correctly, and, therefore, the court declines to consider the argument.

The Government argues in its reply brief that plaintiff's claims are outside the scope of the court's Order of June 15, 2020 and should be precluded.  Def. Supp. Reply Br. at 6.[3]  The Government explains, "[t]he Court was not inquiring of either party as to whether additional exceptions to the 'commingled' rule that were not previously identified may be applicable.  Having already considered and rejected plaintiff's asserted exception, the Court was not inviting plaintiff to attempt to apply another."  *Id*.

The Government is correct.  The court requested information from plaintiff "*only*" on "with which, if any, of defendant's classifications or alternative classifications . . . plaintiff disagrees . . . ."  *See* Order of June 15, 2020, ECF No. 62 at 2.  The court continued that if plaintiff disagreed with defendant's classifications or alternative classifications, plaintiff should state "plaintiff's proffered classifications and justifications

---

[3] The Government also raises counter arguments of prior opportunity and waiver, prejudice and impossibility to argue that the court should not consider plaintiff's additional argument.  Def. Supp. Br. at 6-13.  The court does not discuss, in the interest of judicial economy, these counter arguments.

consistent with the legal determinations in [*DIS Vintage I*] for each of those samples."
*Id*.  The scope of the court's order did not invite additional arguments.

      The court requested only the information that it needed to reach the correct
classification for the subject merchandise.  DIS Vintage's additional argument pertains
not to defendant's classification of the 41 samples, as the court requested, but rather to
the applicable duty rate if the subject merchandise were classified as "commingled."
Plaintiff's additional argument is, accordingly, outside the scope of the court's Order of
June 15, 2020.

      In other cases, it may be appropriate to consider an additional argument that was
outside of the scope of an order should it aid the court in correct classification; however,
in this case, consideration of plaintiff's additional argument will not aid the court in
determining the proper classification of the subject merchandise.  As a result, the court
declines to consider plaintiff's additional argument.

## II.      Classification of Subject Merchandise

      The court now turns to the classification of the 41 samples, and as a result, the
classification of the subject merchandise.  The Government argues that only 16 of the
25 samples should be classified as "worn" under Heading 6309.  *See* Declaration of
Kimberly Wachtel, ECF No. 66-1.  As a result, the Government classifies the imported
goods as commingled and explains that the goods are dutiable at the "highest rate of
duty applicable to any part thereof" in accordance with General Note 3(f).  Def. Supp.
Br. at 33.  The Government argues that since "the highest rate of duty identified for any
the 41 samples is 16.6% *ad valorem*," the court should enter a judgment that 16.6% *ad
valorem* is the appropriate duty rate for the subject merchandise.  *Id*. at 34.  The

Government argues that the 16.6% *ad valorem* rate is "applicable to Def. Exs. 1, 2, 3,

10, 28, and 29 as well as Bale 4 [Samples 1 and 3]. . . . based on the classification of

those samples in either subheading 6203.42.40 or subheading 6204.62.40, HTSUS,

which cover, among other things, children's jeans." *Id*. at 34.

      DIS Vintage disputes the Government's classification and argues that all 41

samples are "worn."  Pl. Supp. Br. at 3.  Plaintiff argues that, as a result, the subject

merchandise should be classified under Heading 6309 and should be "duty free."  *Id.*

**A.**    **Tariff Classification of the 41 Samples of the Subject Merchandise**

      The court explained previously that, in accordance with Chapter Note 3, "for the

subject merchandise to be covered by Heading 6309, it must meet three requirements:

(1) be one of the [specified] articles of textile materials or specified footwear and

headgear; (2) 'show signs of appreciable wear'; and, (3) be entered 'in bales.'"  *DIS*

*Vintage I*, 456 F. Supp. 3d at 1331.  The court determined that the subject merchandise

meets the first and third requirements.  *Id.* at 1336.  Consequently, the tariff

classification of the subject merchandise "hinges on the requirement of Chapter Note

3(i) — whether the samples of the subject merchandise 'show signs of appreciable

wear.'"  *Id*.  The court held that the term "appreciable wear" means "noticeable damage

or impairment caused by use."  *Id*. at 1331-34.  Such damage or impairment must be

visible to the eye.  *Id*. at 1331.  "If 'use' is not sufficient to cause damage or impairment,

then the merchandise will not and should not meet the definition of 'wear.'"  *Id*. at 1333.

The court explained further that "[t]he language of Heading 6309 and Chapter Note 3

permit the possibility that damage to something other than fabric can comprise

'appreciable wear.'"  *Id*. at 1337.

The Government contends that 16 samples should be classified as "worn" under Heading 6309.[4]  The Government maintains that the remaining 25 samples should not be classified as "worn" but rather should be classified under other subheadings of the HTSUS.  *See* Declaration of Kimberly Wachtel, ECF No. 66-1.  Plaintiffs contend that all 41 samples of the subject merchandise "show signs of appreciable wear" and should be classified as "worn" under Heading 6309.  *See* Declaration of Daniel Sabban, ECF No. 75-1.

The court has reviewed the samples of the subject merchandise.  The court agrees that 16 of the 41 samples before the court, uncontested by the parties, are "worn" and should be classified under Heading 6309 because the samples "show signs of appreciable wear" — "noticeable damage or impairment caused by use."  The court does not discuss further the 16 uncontested samples.  Of the remaining 25 samples, the court finds that 16 samples "show signs of appreciable wear" and are "worn" under Heading 6309, and 9 do not "show signs of appreciable wear" and should be classified under other subheadings of the HTSUS for the following reasons.

### 1.   Sixteen "Worn" Samples under Heading 6309

The court finds that the following samples meet the definition of "worn" because they "show signs of appreciable wear" — "noticeable damage or impairment caused by use."  Accordingly, the samples should be classified in Heading 6309 with the applicable duty rate of *free*.

---

[4] The Government describes the following as "worn" under Heading 6309: Exhibit 4, Exhibit 5, Exhibit 7, Exhibit 9, Exhibit 15, Exhibit 18, Exhibit 20, Bale 1 Sample 4, Bale 2 Sample 1, Bale 2 Sample 2, Bale 2 Sample 3, Bale 2 Sample 4, Bale 3 Sample 2, Bale 4 Sample 2, Bale 4 Sample 4 and Exhibit 30.  *See* Declaration of Kimberly Wachtel, ECF No. 66-1.

i.  Exhibit 1 shows signs of "noticeable damage or impairment caused by use" because the sample has one rivet missing on the back pocket with damage to the fabric from the removal of the rivet.

ii.  Exhibit 8 shows signs of "noticeable damage or impairment caused by use" because the sample shows signs of washing and has what appear to be detergent stains.

iii.  Exhibit 10 shows signs of "noticeable damage or impairment caused by use" because the elastic of the waist is stretched and threads are loose.

iv.  Exhibit 12 shows signs of "noticeable damage or impairment caused by use" because the sample is a dress that has belt loops and the impairment of a missing belt.

v.  Exhibit 13 shows signs of "noticeable damage or impairment caused by use" because there is loose threading on the underarms.

vi.  Exhibit 16 shows signs of "noticeable damage or impairment caused by use" because there are two holes underneath the waistband.

vii.  Exhibit 17 shows signs of "noticeable damage or impairment caused by use" because there is noticeable fading.  Additionally, there are approximately six holes on the back of the shirt.

viii.  Exhibit 19 shows signs of "noticeable damage or impairment caused by use" because the buttons appear stressed and the buttonholes indicate use as they are separated and sagging.  In

addition, the sample is a dress that has belt loops and also the impairment of a missing belt.

ix. Bale 1 Sample 3 shows signs of "noticeable damage or impairment caused by use" because the sample has a stain on the back and the label shows signs of washing.

x. Bale 3 Sample 1 shows signs of "noticeable damage or impairment caused by use" because the sample appears faded through repeated wash.  The fading is especially visible on the seam lines.

xi. Bale 3 Sample 3 shows signs of "noticeable damage or impairment caused by use" because there is fading and a stain on the upper left front pocket of the sample.  The stitching, zipper and seams also show signs of damage from use.

xii. Bale 3 Sample 4 shows signs of "noticeable damage or impairment caused by use" because the tag appears worn and shows signs of washing.  There is also a tear on the inside of the waistband.

xiii. Bale 4 Sample 1 shows signs of "noticeable damage or impairment caused by use" because there is a yellow stain on the rear of the left pant leg just below the seat of the sample.

xiv. Bale 4 Sample 3 shows signs of "noticeable damage or impairment caused by use" because the knees appear damaged with some fraying on the cuffs.  There are two small holes on the back of the lower right leg.  The outside label of the waistband also shows signs of damage from use.

xv.    Exhibit 28 shows signs of "noticeable damage or impairment caused by use" because there is a detectable yellow mark on the lining of the left front pocket just below the inside waistband of the sample.

xvi.   Exhibit 31 shows signs of "noticeable damage or impairment caused by use" because there are three places in which the stitches are loose on the seam that holds the left sleeve.  The side zipper opening is partially detached from the fabric.

**2.     Nine Not "Worn" Samples Classified Under Other Subheadings**

The court finds that the following samples do not meet the definition of "worn" in Heading 6309 because they do not "show signs of appreciable wear" — "noticeable damage or impairment caused by use" — and should be classified as follows under other subheadings.  The court responds to plaintiff's assertions that the samples "show signs of appreciable wear," found in the Declaration of Daniel Sabban, ECF No. 75-1, for clarity and to help aid parties in making future classification decisions under Heading 6309.

i.     Exhibit 2 does not show signs of "noticeable damage or impairment caused by use."  No loose threads are discernible, and the sample looks intentionally faded as part of the design rather than from use.  Accordingly, the court agrees with the Government's classification of the sample in subheading 6203.42.40 with the applicable duty rate of 16.6% *ad valorem*.  *See* Def. Supp. Br. at 5.

ii.    Exhibit 3 does not show signs of "noticeable damage or impairment caused by use."  The sample looks intentionally faded as part of the design rather than from use.  Accordingly, the court agrees with the Government's classification of the sample in subheading 6203.42.40 with the applicable duty rate of 16.6% *ad valorem. See* Def. Supp. Br. at 5-6.

iii.   Exhibit 6 does not show signs of "noticeable damage or impairment caused by use."  The undone hem appears intentional as part of the design rather than from use.  Accordingly, the court agrees with the Government's classification of the sample in subheading 6204.59.30 with the applicable duty rate of 16% *ad valorem.  See* Def. Supp. Br. at 8.

iv.    Exhibit 11 does not show signs of "noticeable damage or impairment caused by use."  The sample does not appear to be washed out.  The fray on the hem appears to be part of the design rather than from use.  Accordingly, the court agrees with the Government's classification of the sample in subheading 6204.52.20 with the applicable duty rate of 8.2% *ad valorem.  See* Def. Supp. Br. at 11.

v.     Exhibit 14 does not show signs of "noticeable damage or impairment caused by use."  The sample does not appear to be faded.  Accordingly, the court agrees with the Government's classification of the sample in one of subheadings 6204.41,

6204.42, 6204.43, 6204.44 or 6204.49[5] with the highest applicable

duty rate of 16% *ad valorem.  See* Def. Supp. Br. at 12-13.

vi.   Bale 1 Sample 1 does not show signs of "noticeable damage or

impairment caused by use."  There are no loose threads detected.

Accordingly, the court agrees with the Government's classification

of the sample in subheading 6204.44.40 with the applicable duty

rate of 16% *ad valorem.  See* Def. Supp. Br. at 17.

vii.   Bale 1 Sample 2 does not show signs of "noticeable damage or

impairment caused by use."  There are no loose threads or broken

stitches detected.  Accordingly, the court agrees with the

Government's classification of the sample in subheading

6204.44.40 with the applicable duty rate of 16% *ad valorem.  See*

Def. Supp. Br. at 17-18.

viii.   Exhibit 27 does not show signs of "noticeable damage or

impairment caused by use."  Accordingly, the court agrees with the

Government's classification of the sample in subheading

---

[5] The Government states that "[t]he classification of garments under these subheadings is tied to the fiber content of the product."  Def. Supp. Br. at 13.  The Government further states that the plaintiff failed to provide the fiber content of the garment to Customs and that the garment lacks a fiber content label.  *Id*.  Therefore, the Government is unable to advise the court as to the sample's six-digit or eight-digit classification level.  *Id*.  The court is unable to and, further, does not find it necessary to come to its own conclusion on the classification of Exhibit 14 at the six-digit or eight-digit level, as the court's conclusion of commingling or the duty rate for the subject merchandise will not be affected.

6204.43.40 with the applicable duty rate of 16% *ad valorem*.[6]  *See* Def. Supp. Br. at 28.

ix.   Exhibit 29 does not show signs of "noticeable damage or impairment caused by use."  The fading on the sample appears to be intentional and part of the design.  Accordingly, the court agrees with the Government's classification of the sample in subheading 6203.42.40 with the applicable duty rate of 16.6% *ad valorem. See* Def. Supp. Br. at 29-30.

## B.   Commingling of the Subject Merchandise

The court finds that the subject merchandise is "commingled" pursuant to General Note 3(f)(i).

General Note 3(f)(i) lays out three requirements for "commingled goods" — that the goods are: (1) "subject to different rates of duty"; (2) "so packed together or mingled"; and, (3) "that the quantity or value of each class of goods cannot be readily ascertained by customs officers (without physical segregation of the shipment or the contents of any entire package thereof), by . . . (A) sampling, (B) verification of packing lists or other documents filed at the time of entry, or (C) evidence showing performance of commercial settlement tests . . . ."  *See* General Note 3(f)(i).

The court determined previously that the second and third requirements are met. *See DIS Vintage I*, 456 F. Supp. 3d at 1338.

---

[6] Plaintiff did not provide analysis to support its argument that Exhibits 27-31 are "worn" under Heading 6309.  *See* Declaration of Daniel Sabban, ECF No. 75-1.

The court now determines that the subject merchandise meets the first requirement and that the samples are "subject to different rates of duty."  As described above, sixteen samples fall under Heading 6309 and are, therefore, duty free.  Nine samples fall under other subheadings of HTSUS and are subject to other duty rates — 16.6% *ad valorem*, 16% *ad valorem* and 8.2% *ad valorem*.

Accordingly, the court holds that the subject merchandise is "commingled goods."

### C.    Applicable Duty Rate

As the subject merchandise is commingled, it is subject to the "highest rate of duty applicable to any part thereof."  General Note 3(f)(i); *see also* 19 C.F.R. § 152.13 ("Commingled merchandise shall be assessed with duty at the highest rate or rates applicable to any one kind of merchandise included in the commingling. . . .").

The court finds that the highest rate of duty applicable is 16.6% *ad valorem*.  As described above, Exhibit 2, Exhibit 3 and Exhibit 29 fall under subheading 6203.42.40.  As a result, the duty rate of 16.6% *ad valorem* applies.  The other samples are classified under subheadings with lower rates of duty, therefore, 16.6% *ad valorem* is the highest rate of duty applicable.

### CONCLUSION

The 2003 Oscar-nominated movie, *Seabiscuit*,[7] creates a number of poignant moments based on the accounts offered by Laura Hillenbrand in her 2001 award-winning book, *Seabiscuit: An American Legend*.  One of those moments is the first time

---

[7] SEABISCUIT (Gary Ross/Universal Pictures, Dreamworks Pictures, Spyglass Entertainment, Larger Than Life Productions, the Kennedy/Marshall Company, Touchstone Pictures, 2003), based on LAURA HILLENBRAND, SEABISCUIT: AN AMERICAN LEGEND (2001).

that Seabiscuit's eventual owner, millionaire carmaker Charles Howard (played masterfully by Jeff Bridges), meets Seabiscuit's eventual trainer, Tom Smith (played beautifully by Chris Cooper, who took home a long-overdue Oscar for the role).

In the movie, Smith is sitting by himself in a small clearing, makeshift tent behind him, beautiful white stallion standing a few feet away.  It is nighttime, and Smith is heating a tin of coffee over a fire when he hears a rustling in the bushes.  Out of the darkness, out of the night, comes Howard, bent over, pushing away the thick branches of a large bush, then standing upright, his broad, tall frame lit by Smith's fire.  He is wearing a three-piece suit.

Smith, eyes steady on the odd sight: "Howdy," as much question as greeting (as in, "what the heck?").  "Wha…?"  He starts, stops.  "You hungry?"  In the deep depths of the Depression, an offer of kindness, reminiscent of Tom Joad.

"No, no thanks.  I'm fine."  Howard steps forward, hand outstretched: "Charles Howard."

"Tom," he says.  "Smith."

"Nice to meet you, Tom," Howard says with a warm smile.  He looks over at the stallion, looks back at Smith: "What's in … what's in his bandage?"

"Oh, that's Hawthorn root.  It . . . it increases circulation."  He gestures to a stump: "You wanna sit down?"

"Oh, uh, thank you." Howard sits.  "Will he get better?"

"Already is.  Little."

Howard, serious, no smile: "Will he race?"

Smith stirs the fire: "Noooo.  Not that one."

"So . . . why are you fixing him?"

"'Cause I can," voice rising on the last word.  "Ever' horse is good for somethin'. He could be a cart horse or a lead pony.  An', he's still nice to look at.  You know, you don't throw a whole life away just 'cause he's banged up a little."[8]

* * *

For the foregoing reasons, the court concludes that the subject merchandise is "commingled goods" and subject to the duty rate of 16.6% *ad valorem* because the samples with the highest duty rate applicable are classifiable in subheading 6203.42.40. Plaintiff's Motion for Summary Judgment is, therefore, denied and defendant's Cross Motion for Summary Judgment is granted in part.  Judgment will enter accordingly.

/s/ Timothy M. Reif
Timothy M. Reif, Judge

Dated:       May 17, 2021
                  New York, New York

---

[8] *See also* HILLENBRAND, *supra* note 7, at 27, 29:

> For Smith, training was a long, quiet conversation.  He was baffled by other people's inability to grasp what he was doing.  "It's easy to talk to a horse if you understand his language," he once said.  "Horses stay the same from the day they are born until the day they die . . . .  They are only changed by the way people treat them."  He believed with complete conviction that no animal was permanently ruined.  Every horse could be improved.  He lived by a single maxim.  "Learn your horse.  Each one is an individual, and once you penetrate his mind and heart, you can often work wonders with an otherwise intractable beast."

> Tom Smith and Charles Howard came face-to-face.  The two men stood in different halves of the century.  Smith was the last of the true frontiersmen; Howard was paving Smith's West under the urgent wheels of his automobiles. Howard was driven by image; Smith remained the Lone Plainsman, forbidding and solitary.  But Howard was blessed with an uncanny ability to see potential in unlikely packages, and he had a cavalryman's eye for horsemen.  He took one look at Smith and instincts rang in his head.  He drove Smith to his barn and introduced his horses to their new trainer.